UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-02334-JLS-SHK                    Date: February 04, 2020
Title: Jessica Montoya et al v. Sights on Service, Inc. et al.

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| Terry Guerrero | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:    ATTORNEYS PRESENT FOR DEFENDANT:

Not Present                         Not Present

**PROCEEDINGS:  (IN CHAMBERS) ORDER REMANDING CASE TO SAN BERNARDINO COUNTY SUPERIOR COURT, CASE NO. CIVDS1932445**

Before the Court are the parties' briefs filed in response to the Court's Order to Show Cause Why This Case Should Not Be Remanded to San Bernardino County Superior Court (OSC, Doc. 13).  (Sights Response, Doc. 16; Montoya Response, Doc. 17.)  For the following reasons, the Court REMANDS this action to San Bernardino County Superior Court, Case No. CIVDS1932445.

I.     **FACTUAL ALLEGATIONS AND NOTICE OF REMOVAL**

       **A.  Montoya's Complaint**

       Plaintiff Jessica Montoya is a California citizen who previously worked for Defendant Sights on Service, Inc. d/b/a Secret Shopper ("Sights").  (FAC ¶¶ 5, 6, 13.)  According to the FAC, "SECRET SHOPPER is an app-based secret shopper company. Workers use the app to accept secret shopping tasks for set rates. The worker then performs the task, writes a report, and submits it via the app." (*Id*. ¶ 10.)  The crux of the FAC are the allegations that:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-02334-JLS-SHK                                    Date: February 04, 2020
Title: Jessica Montoya et al v. Sights on Service, Inc. et al.

     i)     SECRET SHOPPER willfully misclassifies its secret shoppers as independent contractors to deprive them of fundamental employment rights, such as the right to minimum wages, the right to overtime, the right to mandated meal breaks, the right to mandated rest breaks, the right to premium wages for missed meal and rest breaks, the right to accurate itemized wage statements, the right to the prompt payment of full wages within time limits designated by law, and the right to be reimbursed for necessary business expenses.

     ii)    SECRET SHOPPER's washers [sic] are misclassified because they are under the control and direction of SECRET SHOPPER in connection with the performance of their work, perform work that is part of the usual course of SECRET SHOPPER 's business, and are not customarily engaged in an independently established trade, occupation, or business in the same nature of the work performed for SECRET SHOPPER.

(*Id*. ¶¶ 11-12.)  Additionally, Montoya alleges that she and other class members were scheduled to work for continuous periods of time ranging from "four (4) or more hours" to "in excess of six (6) hours."  (*Id*. ¶¶ 28, 29, 38.)  Montoya seeks to represent a class defined as "[a]ll individuals who worked for SECRET SHOPPER as a secret shopper in the State of California at any time between October 30, 2015 and the date the court grants class certification."  (*Id*. ¶ 14.)

On October 30, 2019, Montoya filed the instant lawsuit against Sights in San Bernardino County Superior Court.  (Compl. Doc. 1-2.)  She filed her FAC on November 27, 2019, bringing claims for: 1) unpaid minimum wages in violation of California Labor Code §§ 1194, 1197, and 1197.1; (2) unpaid meal period premiums under California Labor Code § 226.7; (3) unpaid rest period premiums under California Labor Code § 226.7; (4) failure to timely pay final wages under California Labor Code §§ 201, 202; (5) non-compliant wage statements under California Labor Code § 226(a); (6) unreimbursed business expenses under California Labor Code § 2802; and (7) violations of California's Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq*.  (*See* FAC ¶¶ 18-69.)

Case No. 8:19-cv-02334-JLS-SHK                                   Date: February 04, 2020
Title: Jessica Montoya et al v. Sights on Service, Inc. et al.

### B. Removal by Sights on Service

On December 4, 2019, Sights removed the action to this Court under 28 U.S.C. § 1441(a), asserting that this Court has original jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). (Notice of Removal at 3, Doc. 1.) In its Notice of Removal, Sights asserted that the amount in controversy in this matter totals $6,950,684, consisting of: (1) $167,311 under Plaintiff's meal period premiums claim; (2) $167,311 under Plaintiff's rest period premiums claim; (3) $103,950 in penalties under Plaintiff's non-compliant wage statements claim; and, (4) $6,512,112 in "waiting time penalties" under Plaintiff's claim for failure to timely pay final wages. (*Id.* at 6-10.)

As there is a three-year statute of limitations on claims brought for waiting time penalties under § 203, *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1401 (2010), and Plaintiff brought this action on October 30, 2019, the amount-in-controversy analysis as to those penalties must focus on individuals who were employed by Defendant on or after October 30, 2016. (*See* Notice of Removal at 9-10.) Accordingly, in connection with its Notice of Removal, Sights provided a declaration from its CEO, Paul Ryan, in which he attests that Sight's business records reveal that:

> [B]etween October 30, 2016 and the present, at least 1,103 individuals completed at least one client opportunity in California. During this time period, these individuals completed approximately 4.23 client opportunities on average and were paid an average of approximately $24.60 per client opportunity.

(Ryan Decl. ¶ 7, Doc. 3.)

In its Notice of Removal, Sights equates that $24.60 per client opportunity pay rate with the Class Members' hourly wage for the purpose of its waiting time penalty calculation. (Notice of Removal at 10.) Sights then reasons that the waiting time penalty is calculated as "$24.60 x 8 hours x 30 days x 1,103 individuals since October 30, 2016" and arrives at a total of $6,512,112. (*Id.*)

On December 12, 2019, the Court issued its OSC, noting that upon review of

Case No. 8:19-cv-02334-JLS-SHK                          Date: February 04, 2020
Title: Jessica Montoya et al v. Sights on Service, Inc. et al.

Sights' calculation of penalties for failure to timely pay wages pursuant to California Labor Code §§ 201-02, it did not appear that the $5 million jurisdictional threshold required for removal under CAFA was plausibly alleged in Sights' Notice of Removal. (OSC at 2.)  In its Response to the Court's OSC, Sights calculation grew to $9,291,385, including the four amounts just set forth above, as well as: (1) $241,212 under Plaintiff's unpaid minimum wage claim; (2) $241,212 under Plaintiff's attempt to "recover liquidated damages in an amount equal to the wages unlawfully unpaid;" and, (3) attorneys fees of $1,858,277.  (Sights Response at 5-10.)  But regardless of the increased overall asserted amount-in-controversy, Sights' calculation of waiting time penalties remained unchanged.  (*Compare* Notice of Removal at 10, *with* Sights Response at 6.)


## II.    <u>LEGAL STANDARD</u>

As the party invoking the removal jurisdiction of this Court, Defendant bears "the burden of establishing federal jurisdiction." *California ex. Rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004).  And "the district court ha[s] a duty to [independently] establish subject matter jurisdiction over the removed action sua sponte, whether the parties raised the issue or not." *United Inv'rs Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 967 (9th Cir. 2004).  "CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs." *Ibarra v. Manheim Investments*, *Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015) (citing 28 U.S.C. § 1332(d)).  Even under the more liberal CAFA removal standard, "there must still be a requisite amount in controversy that exceeds $5 million." *Id.*  "[A] removing party must initially file a notice of removal that includes "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* (citing *Dart Basin Operating Co. v. Owens*, 574 U.S. 81, 88 (2014)).  But "'[b]oth sides' should have an opportunity to submit evidence and argument to the district court in light of [these] standards," and "the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-02334-JLS-SHK                    Date: February 04, 2020
Title: Jessica Montoya et al v. Sights on Service, Inc. et al.

## III.  DISCUSSION

Under each of Sights' submitted calculations, the lion's share of the asserted amount-in-controversy is a product of the method Sights uses to calculate the amount Montoya placed in controversy by bringing her claim for waiting time penalties due to the failure to timely pay final wages under California Labor Code §§ 201-02.  If that calculation is implausible or incorrect as a matter of law, the remaining amount-in-controversy comes nowhere near the CAFA minimum.  Hence, the Court focuses on that aspect of Plaintiff's claims.

As explained below, the Court finds that Sights' waiting time penalty calculation is grossly inflated, owing to Sights' unreasonable adoption of a fiction concerning Class Members' daily wage and time worked.  Once that fiction is discarded, it becomes clear that the amount-in-controversy requirement has not been satisfied by a preponderance of the evidence.

### A.  Waiting Time Penalties Under California Labor Code § 203

Waiting time penalties are calculated according to the provisions of California Labor Code § 203.  *Mamika v. Barca*, 68 Cal. App. 4th 487, 494 (1998).  The penalty is '"equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days.'"  *Drumm v. Morningstar, Inc.*, 695 F. Supp. 2d 1014, 1018 (N.D. Cal. 2010) (quoting *Mamika*, 68 Cal. App. 4th at 493).  "The 'critical computation' is 'the calculation of a daily wage rate, which can then be multiplied by the number of days of nonpayment, up to 30 days.'"  *Id*.

There are two calculation methods that Courts have used to arrive at the daily wage and subsequently, the waiting time penalty.  The *Drumm* court calculated the waiting time penalty by "dividing the employee's annual wages by 52 weeks, dividing the resulting figure by 40 hours to obtain an hourly rate, multiplying the hourly rate by eight to obtain a daily wage, and then multiplying the daily wage by the number of days (up to a maximum of 30) that defendant failed to pay his wages when they came due."  *Id*. at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-02334-JLS-SHK                          Date: February 04, 2020
Title: Jessica Montoya et al v. Sights on Service, Inc. et al.

1019.  The *Hernandez* court multiplied an hourly wage by a factor of eight to derive a daily rate of pay, which is then similarly multiplied by up to thirty days to determine the waiting time penalty.  *Hernandez v. Martinez*, No. 12-CV-06133-LHK, 2014 WL 3962647, at *13-*14 (N.D. Cal. Aug. 13, 2014).  Additionally, while each of those cases computed a daily pay rate by multiplying the determined hourly wage by a factor of eight, that was because in each instance, it was alleged that the laborers at issue were full-time employees.  *Drumm*, 695 F. Supp. 2d at 1021; *Hernandez*, 2014 WL 3962647, at 1-2.  Where the amount of work differs, the calculation should be adjusted accordingly. *See Carranza v. Nordstrom, Inc.*, No. EDCV 14-01699 (MMM) (DTBx), 2014 WL 10537816, at *13 (C.D. Cal. Dec. 12, 2014) (calculating daily wage rate by multiplying hourly rate by five where evidence suggested that class members worked an average of five hours per day).  The key point is that § 203 requires that the penalty "accrue from the due date thereof *at the same rate* until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."  *Mamika*, 68 Cal. App. 4th at 492 (emphasis added).

## B.  Sights' Implausible Calculation

Sights estimation of $6,512,112 in potential waiting time penalties results from the two unsupported and, indeed, counterfactual assumptions that: (1) Class Members' hourly wage was equivalent to the $24.60 per client opportunity pay rate and (2) Class Members' worked at that rate eight hours per day, five days per week, every week. (Notice of Removal at 9-10; Sights Response at 5-6.)  Sights states that these assumptions are a product of Plaintiff's failure to "specify the amount in controversy[] and allege[] substantive facts from which to derive a precise basis for calculating damages."  (Sights Response at 4.)  As such, Sights was "left to use reasonable extrapolations, deductions and inferences to proffer the aggregate value of claims for compensatory damages, statutory penalties and attorneys' fees that are plausibly at issue in this case."  (*Id*. at 4 (citing *Ibarra*, 775 F.3d at 1197).)  Sights contends that it is using a permitted "chain of reasoning that includes reasonable assumptions."  (*Id*. at 5 (citing *Ibarra*, 775 F.3d at 1199).)  But while the Ninth Circuit stated in *Ibarra* that reasonable assumptions are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-02334-JLS-SHK                                    Date: February 04, 2020
Title: Jessica Montoya et al v. Sights on Service, Inc. et al.

permissible, it emphasized that they must have adequate support and "cannot be pulled from thin air." *Ibarra*, 775 F.3d at 1199.  Sights' assumptions appear to have been pulled from thin air.

As the above-cited cases demonstrate, the calculation of waiting time penalties under § 203 must be colored by the nature and duration of the work at issue.  For example, the *Drumm* and *Heranandez* courts used eight-hour workdays to calculate penalties tied to full-time employees.  Drumm, 695 F. Supp. 2d at 1021; Hernandez, 2014 WL 3962647, at 1-2.  And the *Carranza* court made the appropriate downward adjustment to a five-hour workday to reflect the nature of the work at issue.  *See Carranza*, 2014 WL 10537816, at *13.

Sights' calculation is completely detached from the reality of the work at issue, as is demonstrated by the FAC's allegations and Sights' own evidence.  First, as noted above, Sights' own CEO attests that since October 30, 2016, 1,103 putative Class Members completed "4.23 client opportunities on average and were paid an average of approximately $24.60 per client opportunity."  (Ryan Decl. ¶ 7 (emphasis added).)  In other words, the average Class Member completed approximately 1.41 client opportunities per year, and over the entire three-year period at issue, earned a total of $104.06 (4.23 x $24.60).  Thus, the putative Class Members here were sporadically engaged to work and earned wages in a manner that falls well short of part-time employment, let alone full-time employment.  In light of Mr. Ryan's statements, Sights' assertion that waiting time penalties should be calculated based on a *daily* wage of $196.80 (8 x $24.60), when the average class member earned $104.06 over *three years*, is categorically implausible, bordering on absurd.  Sights utilizes that inflated daily wage in treating the Class Members as though they worked full-time jobs, and received earnings in that amount each day of the work-week.  Accepting Sights' contention would mean that $6,512,112 in waiting time penalties has been placed at issue for workers who earned a grand total of $114,778.18 (4.23 x $24.60 x 1,103) over three years.

Each of Sights' amount-in-controversy calculations includes $6,512,112 in waiting time penalties.  (Notice of Removal at 9-10; Sights Response 5-6.)  Because the Court concludes that Sights has failed to plausibly allege those penalties, and because those penalties create the lion's share of the purported amount in controversy, the Court

Case No. 8:19-cv-02334-JLS-SHK                                      Date: February 04, 2020
Title: Jessica Montoya et al v. Sights on Service, Inc. et al.

concludes that CAFA's $5 million jurisdictional minimum has not been satisfied by a preponderance of the evidence.[1]

## IV.    CONCLUSION

For the foregoing reasons, this action is REMANDED to San Bernardino County Superior Court, Case No. CIVDS1932445.

Initials of Preparer:  tg

---

[1] In its OSC Response, for the first time, Sights argues that under *Melendez v. San Francisco Baseball Associates LLC*, 7 Cal. 5th 1 (2019), the amount in controversy under the waiting time penalty claim could be as high as $27,871,839.  (Sights Response at 6.)  That case is inapposite. There, the plaintiffs asserted they were "'temporarily laid off' every time a specific job assignment ends, and such layoffs are discharges within the meaning of Labor Code section 201." *Melendez*, 7 Cal. 5th at 11.  That is not Plaintiff's theory of this case and she has made no allegations to that effect in the FAC. (Plaintiff Response at 6-7; *see* FAC ¶¶ 43-48.